Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor and Equal Employment Opportunity Commission, Plaintiffs,

v.

SHENANDOAH BAPTIST CHURCH, a religious association, operating as Roanoke Valley Christian School, Defendant.

Civ. A. No. 78–0115.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 3, 1983.

Marshall H. Harris, Regional Sol., U.S. Dept. of Labor, Philadelphia, Pa., Paul R. Thomson, Jr., U.S. Atty., Roanoke, Va., Leroy D. Clark, General Counsel, William L. Robinson, Associate General Counsel, Mollie W. Neal, Reg. Atty., EEOC, Baltimore, Md., for plaintiffs.

Donald W. Huffman, Bird, Kinder & Huffman, Roanoke, Va., for defendant.

MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiffs, United States Secretary of Labor and the Equal Employment Opportunity Commission, have brought this action for injunctive relief to remedy alleged violations of the minimum wage and equal pay

provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, 206(a), 206(d) (hereafter "the FLSA" or "the Act"), and for restitution of back wages allegedly wrongfully withheld in violation of those provisions.[1] Defendant, Shenandoah Baptist Church, is an unincorporated religious association which operates a preschool, an elementary school and a secondary school, known collectively as the Roanoke Valley Christian School.

The Secretary of Labor, pursuant to Rule 56 of the Federal Rules of Civil Procedure, has moved for summary judgment in his favor asserting that he is entitled to judgment as a matter of law on the issue of defendant's minimum wage liability. This motion involves only the wages of certain non-professional employees of defendant's school. The EEOC, which is involved in the equal pay dispute surrounding defendant's professional employees (teachers and administrators), has not moved for summary judgment at this time on the equal pay issue.

Defendant, since the inception of this suit, has defended its payment practices on two grounds. First, it asserts that the FLSA does not apply to church-operated schools in general. Second, it argues that as applied, the FLSA violates its rights secured by the Religion Clauses of the First Amendment to the United States Constitution.

As there are no genuine issues of material fact the Secretary's motion is ripe for determination at the present time. For the reasons given below the court concludes that: 1) the FLSA's minimum wage provisions apply to church-operated schools; and 2) requiring defendant to comply with these provisions in its role as an employer of non-exempt school employees would violate neither the Establishment Clause nor the Free Exercise Clause of the First Amendment.

1. In September, 1979, the EEOC became plaintiff in this case for purposes of the equal pay claim, 29 U.S.C. § 206(d), while the Secretary of

## FACTS

The parties have stipulated the following facts: Defendant Shenandoah Baptist Church is an unincorporated religious association with an office and place of business in Roanoke, Virginia. The Church operates on its premises a preschool, elementary school, junior high school and high school that are known collectively as the Roanoke Valley Christian School. In operating the school, defendant employs persons as teachers, bus drivers, kitchen workers, and day care center workers. These employees regularly handle and work on goods and materials manufactured or produced outside the Commonwealth of Virginia.

The minimum wage prescribed by the FLSA during the calendar years in question, and the amounts defendant allegedly paid its non-exempt employees during those years is as follows:

| YEAR | MINIMUM WAGE | LOWEST RATES PAID |
|------|------|------|
| 1976 | $2.30 | $2.20 |
| 1977 | $2.30 | $2.20 |
| 1978 | $2.65 | $2.33 to $2.65 |
| 1979 | $2.90 | $2.35 to $2.90 |
| 1980 | $3.10 | $2.35 to $3.10 |
| 1981 | $3.35 | $2.50 to $3.35 |
| 1982 | $3.35 | $2.65 to $3.35 |

## APPLICABILITY OF THE FLSA'S MINIMUM WAGE PROVISIONS TO CHURCH-OPERATED SCHOOLS

In various briefs filed in this action defendant has asserted that the educational activities of the Church, specifically its operation of the Roanoke Valley Christian School, are exempt from the FLSA's minimum wage provisions. Defendant suggests that such a conclusion is compelled by a reading of *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), wherein the Court held that schools operated by a church to teach both religious and secular subjects are not within the jurisdiction granted by the National Labor Relations Act. In *Catholic Bishop* the Court stated that where there is a significant risk that exercise of the NLRB's jurisdiction would in-

Labor remained plaintiff for the minimum wage portion of the claim because of Reorganization Plan No. 1 of 1978, 92 Stat. 3781.

fringe on the church's First Amendment rights, there must be a showing of a clear, affirmative expression of congressional intent to bring the church-operated school's teachers within the Board's jurisdiction. 440 U.S. at 504, 99 S.Ct. at 1320. Given the absence of such a clear expression of Congress' intent, the Court found it unnecessary to resolve the defendant's First Amendment claims. *Id.* at 507, 99 S.Ct. at 1322. Thus, applying *Catholic Bishop* to the case at bar defendant submits that this court can enter judgment in its favor without consideration of its First Amendment claims should it find that there is no clear, affirmative expression of congressional intent to have the FLSA's minimum wage provisions apply to church-operated schools.

Recognizing that requiring defendant to comply with the federal minimum wage laws may pose serious constitutional questions, it is incumbent on the court to first decide whether Congress clearly and affirmatively intended to include church-operated schools within the Act's coverage. After a careful reading of the Act and its legislative history the court concludes that Congress clearly intended the Act's minimum wage provisions to apply to church-operated schools.

Section 3(s)(5), 29 U.S.C. § 203(s)(5), the applicable coverage section, reads in pertinent part:

(s) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and which— * * *

(5) is engaged in the operation of * * * *a preschool, elementary or secondary school * * * (regardless of whether or not such * * * school is public or pri-* vate or operated for profit or not for profit);* * * *

29 U.S.C. § 203(s)(5) (emphasis supplied). The highlighted portion of this coverage section reveals an obvious congressional intent to require church-operated schools to pay their non-exempt employees the prescribed minimum wage. Since church-operated schools are private and generally not operated for profit they clearly fall within the literal terms of Section 3(s)(5).

Two federal district courts have also recently decided that church-operated or affiliated preschools are not exempt from the Act's minimum wage provisions. *Donovan v. Central Baptist Church*, 25 BNA Wage and Hour Cas. 815, 816 (S.D.Tex. 1982); [2] *Marshall v. First Baptist Church*, 82 CCH La.Cas. ¶ 33,548, 23 BNA Wage and Hour Cas. 386 (D.S.C.1977).

In addition, there is authoritative legislative history demonstrating that Congress knowingly included church-operated educational institutions under the coverage provisions of the Act.

In 1966 Congress amended the FLSA by extending coverage to public and private schools. As originally proposed in the House, H.R. 13712, 89th Cong., 2nd Sess. (1966), would have extended coverage to public and private institutions of higher education, whether operated for profit or not, but would have kept elementary and secondary schools outside of the Act's scope. During House floor debate on the bill Congressman Collier of Nebraska proposed an amendment to expand the definition of a covered "enterprise" to include elementary and secondary schools as well as institutions of higher education. 112 Cong.Rec. 11371 (1966). Explaining the purpose of his amendment, Representative Collier stated that these schools were to be brought within the Act's coverage as a means of achieving "equity," by ensuring universal application of the Act to all educational institutions. *Id.*

---

**2.** "[T]here is apparently no explicit exemption in the F.L.S.A. for churches or church-related schools. * * * Indeed the Act specifically defines a covered enterprise to include a pre-

school, even if it be private and operated on a non-profit basis. 29 U.S.C. § 203(s)(5)." *Donovan* at 816.

During this House debate the question of whether the proposed amendment would extend coverage to church-run schools was raised. Congressman Pucinski of Illinois specifically asked whether nuns working in a parochial elementary school's cafeteria would have to be paid the minimum wage. *Id.* Congressman Collier replied that nuns would not be covered. *Id.* Congressman Burton of California clarified that response by stating that the amendments would not bring members of a "religious order" under the Act's definition of an "employee," and thus "a minimum wage would not be required to be paid a nun." *Id.* It is therefore apparent that while nuns or other members of a "religious order" would continue outside the Act's definition of an "employee," the amendment was intended to bring church-operated schools within the Act's definition of a covered "enterprise." Congressman Collier's amendment to H.R. 13712 was proposed to, and passed by, the House the same day, May 25, 1966.

H.R. 13712 was then considered by the Senate Committee on Education and Public Welfare where it was amended, in part, by deleting public and private elementary and secondary schools from the statutory definition of "enterprise." This action was taken because of concern about the possible financial impact an increase in wages might have on local public school systems and because no committee hearings had been held on extending coverage to elementary and secondary schools. S.Rep. No. 1487, 88th Cong., 2nd Sess., reprinted in [1966] U.S.Code Cong. & Ad.News 3002, 3010.

The full Senate passed the Committee's amendment on August 26, 1966. The Senate amendment and H.R. 13712 were then referred to a conference committee which agreed to a substitute for both. Conf.R. No. 2004, 88th Cong., 2nd Sess., reprinted in [1966] U.S.Code Cong. & Ad.News 3048. The conference committee reinstated Congressman Collier's amendment and expanded the definition of "enterprise" to include public and private elementary and secondary schools which are operated for profit or not. *Id.*

From the foregoing, and particularly in light of Congressmen Collier and Burton's explanations of the amendment's purpose, the court concludes that Congress clearly and affirmatively intended the FLSA's minimum wage provisions to apply to all non-exempt employees of public and private, including church-operated or affiliated, schools, excepting employees who are members of a "religious order."

Defendant has also asserted in earlier filed briefs that "employees of Shenandoah Baptist Ministries in their work at Roanoke Valley Christian Schools are engaging in their Christian ministry and thus were intended to be excluded under the Act" as members of a "religious order." Memorandum In Support of Defendant's Motion To Dismiss and In Opposition To Plaintiffs' Motions To Compel Discovery at 6 (hereafter "Defendant's Memorandum to Dismiss"). Defendant thus seeks to equate its lay, nonprofessional support personnel, such as bus drivers and cafeteria workers, with nuns, priests and others who are members of recognized "religious orders." While this court is in no way attempting to challenge the sincerity and deepness of defendant's employees' religious beliefs and convictions, it is apparent that Congress did not intend the term "religious order" to be construed so broadly as to include all who subscribe to a particular religious philosophy. To do so would create an exception capable of swallowing up the rule. Therefore, absent a specific legislative exception for employees such as defendant's, none will be created by this court.

Therefore, having found that Congress clearly and affirmatively intended to extend the Act's coverage to church-operated schools, the court concludes that the Act's minimum wage requirements do apply to such schools. Such a result is proper in that the record reveals that defendant's business operations are related and controlled by one organization. As such its activities are performed for a common business purpose under Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1). Also, the

court concludes that the operation of the Roanoke Valley Christian School constitutes an "enterprise" within the meaning of Section 3(r), 29 U.S.C. § 203(r). Lastly, since defendant's school employees are employed in an "enterprise engaged in commerce" within the meaning of Section 3(s)(5), 29 U.S.C. § 203(s)(5), they are entitled to compensation at not less than the statutory minimum wage pursuant to Section 6(a), 29 U.S.C. § 206(a). The court must, therefore, undertake the task of determining whether application of these provisions to defendant would violate its rights secured by the First Amendment.

### ESTABLISHMENT CLAUSE

The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion." As noted by the Chief Justice in his opinion for the Court in *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), "[t]he language of the Religion Clauses of the First Amendment is at best opaque * * *" Given the absence of a precisely worded constitutional prohibition in this area, it is the judiciary's duty to determine when actions by the State impermissibly cross this nebulous line. Fortunately, over the years the Supreme Court has set forth more manageable tests for determining whether a legislative enactment passes muster under the Establishment Clause. In *Lemon, supra,* the Court stated that in order to stand in the face of Establishment Clause objections, the questioned statute must

> [f]irst * * * have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education v. Allen*, 392 U.S. 236, 243 [88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060] (1968); finally, the statute must not foster "an excessive government entanglement with religion." *Walz [v. Tax Commissioner*, 397 U.S. 664,] 674 [90 S.Ct. 1409, 1414, 25 L.Ed.2d 697].

403 U.S. at 612–13, 91 S.Ct. at 2111.

Since defendant has conceded in briefs filed with the court that the "legislative purpose underlying the Fair Labor Standards Act is secular; the legislation was intended neither to advance nor inhibit religion," Defendant's Memorandum to Dismiss at 7, the court will only address the second and third factors enumerated in *Lemon.*

It is abundantly clear to the court that the principal or primary effect of the FLSA's minimum wage provisions has been neither to advance nor inhibit religion. The federal minimum wage law creates no church, supports no church, favors no religious beliefs over others, neither punishes nor awards religious thought whether popular or dissident, taxes no religious activity, nor authorizes participation by the State in the internal affairs of any religious organization. Rather,

> the act has served as a foundation upon which has been built a standard of living for our citizens which is second to none. It has enabled countless Americans to enjoy a dignity, security, and a general well-being which would not otherwise have been possible.

S.Rep. No. 1487, *supra,* at 3003.

It is the existence or absence of the last factor over which the parties so strongly disagree. Defendant submits that application of the minimum wage provisions to its school would necessarily result in undue government entanglement in and surveillance of its internal religious affairs. Defendant states that it "is governed by the Word of God and believes that it should not be required to submit its internal affairs to scrutiny and regulation under a government of men." Defendant's Memorandum to Dismiss at 10. In particular, defendant cites Section 11 of the Act, 29 U.S.C. § 211, which authorizes investigations by the Wage and Hour Administrator of all industries subject to the Act, and which requires employers to make, keep and preserve adequate payroll records. According to defendant, Section 11 requires, or at a minimum authorizes, official and continuing surveillance of its affairs and that this de-

gree of State involvement is impermissible under *Walz v. Tax Commissioner*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). The court, while acknowledging the extensive investigative and enforcement powers provided for under the Act, does not believe that requiring defendant to comply with the Act's minimum wage provisions in its role as an employer of school personnel would result in excessive government entanglement in defendant's religious affairs.

As stated by the Court in *Walz*, the test of whether a legislative enactment fosters excessive government entanglement "is necessarily one of degree." 397 U.S. at 674, 90 S.Ct. at 1414. "[T]he line of separation, far from being a 'wall,' is a blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship." *Lemon, supra* 403 U.S. at 614, 91 S.Ct. at 2112. In many instances religious organizations have been held to be subject to unobtrusive, religiously-neutral State regulation in areas such as fire codes, sanitation, zoning and social security taxes. *Id.; United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982).

That the Government requires covered employers to maintain adequate payroll records, and that it may require an employer to periodically make available such records for examination and inspection, does not mean that defendant's religious affairs will be subject to ongoing surveillance or that the Government will become enmeshed in its religious affairs. Indeed, as the FLSA's minimum wage provisions are concerned solely with how much non-exempt employees are paid, there would be no occasion for governmental involvement in defendant's doctrinal or other religious concerns. Investigations, properly conducted in accordance with 29 U.S.C. § 211, require no significant disruptions of defendant's religious or educational activities.

The court also finds persuasive the Secretary's argument that to exempt church-operated schools from the Act's minimum wage provisions would raise even far more troubling Establishment Clause problems. To apply these provisions to all private, not-for-profit schools *except* church-operated or affiliated schools would place these educational institutions at a competitive advantage vis-a-vis other schools. The net result would be impermissible direct State subsidization of sectarian schools and their religious activities, a result expressly forbidden by the First Amendment. *See Committee for Public Education v. Nyquist*, 413 U.S. 756, 774–794, 93 S.Ct. 2955, 2966–2976, 37 L.Ed.2d 948 (1973); *Roemer v. Maryland Public Works Board*, 426 U.S. 736, 749–54, 764–65, 96 S.Ct. 2337, 2346–2348, 2353–2354, 49 L.Ed.2d 179 (1976).

Therefore, the court concludes that since the Act's minimum wage provisions were designed neither to advance nor inhibit religion, have a principal or primary effect entirely unrelated to religion, and would not foster excessive government entanglement with defendant's religious affairs, requiring defendant to fully comply with the FLSA's minimum wage provisions in its role as employer of school personnel would not violate its rights secured by the Establishment Clause.

## FREE EXERCISE CLAUSE

Defendant alleges that even if the Establishment Clause would not be violated by requiring it to comply with the FLSA's minimum wage provisions, the Free Exercise clause requires that it be exempted from the Act's coverage. However, in support of its argument, defendant relies almost exclusively on the rights of its employees, its students, and the students' parents, whose free exercise rights would allegedly be burdened by application of the Act to the Church. Defendant's Memorandum to Dismiss at 16–18.

Ordinarily, one may not assert the constitutional rights of third parties as a defense. *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953). The fact that third parties' constitutional rights may be implicated should this court require defendant to pay its non-exempt employees the statutory minimum wage is no justification for a judicial determination of their possible rights at this time. This is partic-

ularly true since there has been no showing of any "substantial relationship" between the defendant and the third parties whose Free Exercise rights it seeks to assert. *Eisenstadt v. Baird*, 405 U.S. 438, 446, 92 S.Ct. 1029, 1034, 31 L.Ed.2d 349 (1972). The interests of defendants' employees and itself are in fact adverse, even though defendant claims that none of its employees have complained about receiving substandard wages and that they are satisfied with the terms of their employment. Realizing that certain employees may be hesitant about coming forward with complaints about their wages because they fear losing their positions, the court cannot in good conscience permit defendant to stand as their representative on this issue.

Turning then to the question of whether requiring defendant to comply with the FLSA's minimum wage provisions would infringe on its right to freely exercise its religious beliefs, the court finds that such a requirement would not impermissibly burden its Free Exercise rights. A similar finding was made almost thirty years ago by the Seventh Circuit in *Mitchell v. Pilgrim Holiness Church Corp.*, 210 F.2d 879 (7th Cir.1954), *cert. denied*, 347 U.S. 1013, 74 S.Ct. 867, 98 L.Ed. 1136 (1954). In *Mitchell*, the Secretary of Labor sued to require the defendant to pay certain of its employees the statutory minimum wage, to pay its employees the overtime wage prescribed by the FLSA, and to make, keep and preserve adequate and accurate payroll records. 210 F.2d at 880. The employees sought to be covered were involved in the production, printing, handling, addressing and distributing of books, magazines, pamphlets and leaflets issued by the Church. In holding that requiring defendant to comply with the FLSA would not violate its free exercise rights, the court stated:

> It seems clear, in the instant case, that the Fair Labor Standards Act is such a reasonable, nondiscriminatory regulation by an Act of Congress, a regulation in the interests of society for the welfare of all workers * * * that, therefore the application of the provisions of the Act to

the Pilgrim Holiness Church Corporation and to its employees * * * does not violate the constitutional provisions guaranteeing the free exercise of religion.

*Id.* at 885.

Defendant in the case at bar concedes that payment of a minimum wage is, in of itself, not repugnant to any of the Church's religious tenets. Defendant has readily stated that "it is not claiming a constitutional right to pay its employees substandard wages." Defendant's Memorandum to Dismiss at 9. Also, in deposition testimony the Church's pastor, Robert L. Alderman, testified that he "would have no objection to paying our people a whole lot more." Alderman dep. at 37, 39–40. Therefore, we do not have a situation in which requiring a party to comply with a legislative mandate would force the party to violate or even compromise its legitimate religious convictions.

Rather, defendant's Free Exercise claim rests entirely on the assertion that compliance would require it to acquiesce to the commands of a "lesser authority" than God, Alderman dep. at 35, and that it would result in impermissible State involvement in and surveillance over its internal religious affairs. Such claims are without merit especially since defendant accepts and complies with public sanitation and fire codes which necessitates at least as much government "surveillance." *Id.* at 46–48.

Even if requiring defendant to comply with the federal minimum wage law would infringe on its religious beliefs, it is well-established that "[n]ot all burdens on religion are unconstitutional." *United States v. Lee*, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982). "The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest. (Citation omitted)" *Id.* at 257–58, 102 S.Ct. at 1055. It is apparent to this court that the Government's interest in ensuring that workers are paid a wage sufficient to provide for themselves and their families is great.

It remains to be determined whether accommodating the church's beliefs will "unduly interfere with fulfillment of the governmental interest." *Id.* at 259, 102 S.Ct. at 1056. While accommodation should be sought whenever possible, there is a point at which accommodation would "radically restrict the operating latitude of the legislature." *Braunfeld v. Brown,* 366 U.S. 599, 606, 81 S.Ct. 1144, 1147, 6 L.Ed.2d 563 (1961). Were every organization either affiliated with or operated by a religious association granted an exemption from the Act's minimum wage provisions, an unduly large segment of the American work force would be left without the benefit and protection of the Act. Courts would be called upon to adjudicate the free exercise claims of a multitude of organizations, each in their own way asserting religious tenets that would somehow be violated by enforcement of the Act. The minimum wage requirements imposed on employees must, therefore, be applied uniformly to all, except as Congress in its wisdom and discretion provides otherwise.

In many respects the present controversy is no different from that confronted by the Supreme Court recently in *Lee, supra.* In *Lee* the Court, facing similar Free Exercise claims by an Amish employer, held that Congress can constitutionally regulate the economic relationship between employers and employees even when the regulations directly burden the employers' sincerely held religious convictions. Just as the Court in *Lee* decided that the defendant employer must withhold Social Security taxes from his employees and pay the employer's share of such taxes, so also does this court hold today that a church-operated school must pay its non-exempt school employees the federally imposed minimum wage. Also, while the FLSA requires a covered employer to pay the mandated wage, nothing in the Act requires anyone to keep those monetary benefits. Nothing in the court's decision today, therefore, would prevent defendant's employees from returning a portion of their wages to the Church for use in its religious or educational missions.

## CONCLUSION

Having found that requiring defendant to comply with the FLSA's minimum wage provisions as an employer of school personnel would not violate its rights secured by the First Amendment's Religion Clauses, the court concludes that plaintiff Secretary of Labor's motion for summary judgment on the issue of defendant's minimum wage liability must be granted. Specific relief shall not be ordered until a proper hearing can be held. An Order consistent with the foregoing shall be entered this day.