EMILY TONGE *vs.* CHARLES E. SALISBURY.

MARCH 16, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J.  This action of the case in assumpsit was brought to recover for services performed by the plaintiff in caring for Ella J. Heathcote.  After trial in the Superior Court a jury returned a verdict for $981.39.  The case is before this court on defendant's exceptions.

March 3, 1913, the probate court of Providence appointed defendant temporary guardian of Miss Heathcote, who was then about fifty-seven years of age.  He acted as her guardian until her death, November 19, 1929.  He arranged for Miss Heathcote to live with her two maiden aunts. Plaintiff lived in a house in the rear of the aunt's house and during their lifetime did housework for them for which services she was paid.  They died in November, 1925.

Plaintiff testified that she remained with Miss Heathcote after the death of her aunts;  that November 23, 1925, defendant called and asked her to stay with Miss Heathcote until he could find a place for her, in May or June, and that she agreed to do so;  that he asked Miss Heathcote if she would give to the plaintiff the check for $10 which he sent to her every week to use for running the house and that Miss Heathcote consented to this arrangement.

Defendant had a checking account in the name of the estate of his ward.  He paid the rent for the house and bills

for the lighting and heating thereof. Every week he sent Miss Heathcote an estate check for $10 payable to her order. The checks were signed by him as temporary guardian; they were endorsed by Miss Heathcote and many of them were also endorsed by the plaintiff.

Plaintiff testified that the cash received for the checks was expended for food and other necessaries for Miss Heathcote and herself. She also testified that in May, 1926, she asked defendant when he was going to pay for her services; to which he replied he thought the weekly check of $10 was paying her; that she answered "No" and he said he would see what the probate judge would allow her. Plaintiff continued to live with Miss Heathcote until August 23, 1927, when the latter was taken by defendant to live in a private home. October 22, 1927, plaintiff called upon defendant and handed him her claim for services rendered to his ward from December 1, 1925, to August 23, 1927, at the rate of $12 per week. This statement was made out against the estate of Ella J. Heathcote.

Defendant testified that he first met the plaintiff while she was caring for Miss Heathcote's aunt; that about a week after the death of this aunt he went to the house and found plaintiff there; that she said she would like to remain with Miss Heathcote under the same arrangement he had had with her aunt and that he agreed to this plan. He testified that he sent the checks to Miss Heathcote, as formerly; that about a year later plaintiff came to his office and said she wanted money in addition to what she was getting from Miss Heathcote and his reply was that he would not make any change in the arrangements unless he had permission from the probate judge to do so; that when plaintiff handed him a bill against the estate of Miss Heathcote he told her he would not pay the bill, as he had carried out his agreement with her.

The law applicable to the evidence is that it was the duty of the defendant, as temporary guardian of Miss Heathcote, to provide for her care and maintenance according to her

means and station in life, and that he would be allowed, in the settlement of his account as guardian, such reasonable sums as he might have paid for her suitable support. §§ 5663, 5679, G. L. 1923. It is generally held that all contracts made by a guardian for the care and maintenance of his ward bind him personally and not the estate of his ward and that he cannot escape such personal liability by stating that he made such contracts only in his official capacity. *Rollins* v. *Marsh*, 128 Mass. 116; 28 C. J. 1165; Woerner, Am. L. of Guardianship, §§ 185, 192. In *Corcoran* v. *Allen*, 11 R. I. 567, this court said: "The fact that the guardian has not paid the asylum (for his ward's support) . ought not to prevent the allowance (of his account), for the guardian is personally chargeable, not the ward's estate." As the guardian is liable personally, he should be sued individually, and if he is described in the writ "as guardian of B" the description has no legal effect and may be regarded as surplusage. *Municipal Court* v. *Le Valley*, 25 R. I. 236; *Rollins* v. *Marsh, supra;* 28 C. J. 1251.

The trial justice instructed the jury conformably to these principles of law and submitted to them the issue whether the evidence proved that defendant agreed, either expressly or impliedly, to pay plaintiff for caring for Miss Heathcote. When denying defendant's motion for a new trial the trial justice in his rescript summarized the evidence and concluded by saying the evidence justified the verdict for plaintiff and did substantial justice.

Before submitting the case to the jury the trial justice denied defendant's motion for a directed verdict on the ground that the uncontradicted evidence showed no express contract between plaintiff and defendant for plaintiff to care for Ella J. Heathcote and that defendant could not be held liable personally on an implied contract.

Defendant has urged his exceptions to the denial of his motions for a directed verdict and a new trial, to the denial of his requests to charge, to certain portions of the charge and to the exclusion of two questions on cross-examination

of plaintiff. None of the exceptions can be sustained. The conflicting evidence, with the inferences to be drawn therefrom, required the submission of the issues to the jury. The jury was correctly instructed in the law applicable to these issues. The trial justice committed no error in denying some of defendant's requests to charge and in modifying other requests. The evidence is sufficient to support the verdict and consequently there was no error in the denial of the motion for a new trial.

Defendant testified that his ward could not have stayed in the house without some one to care for her. It was the duty of the guardian to provide such care. Plaintiff testified that defendant asked her to stay with Miss Heathcote until he could find a place for Miss Heathcote to live—"about the end of the year"—which would be about four weeks. She stayed there ninety weeks, and she was under no moral or legal duty to stay with Miss Heathcote. When a person makes a request for services under such circumstances that a reasonable person would assume that the one making the request expected and intended to pay for such services, the law will imply a promise to pay the reasonable value of such service. *Spalt & Sons Inc.* v. *Maiello,* 48 R. I. 223; *Fuller* v. *Mowry,* 18 R. I. 424; *Tucker* v. *Wakefield Trust Co.,* 53 R. I. 221.

Defendant's exceptions are all overruled. The case is remitted to the Superior Court with direction to enter judgment on the verdict.

*Moss, Haslam & Arnold,* for plaintiff.
*W. Louis Frost,* for defendant.