Shelley Anne **TURNER**

v.

**UNIFICATION CHURCH.**

Civ. A. No. 75–0424.

United States District Court,
D. Rhode Island.

Oct. 25, 1978.

John A. Burgess, Montpelier, Vt., Mitchell S. Riffkin, Providence, R. I., for plaintiff.

William A. Curran, Providence, R. I., David R. Kuney, Washington, D. C., for defendant.

OPINION

PETTINE, Chief Judge.

The plaintiff in this case seeks to invoke this Court's jurisdiction by claiming causes of action under numerous federal statutes, one constitutional amendment, and two Rhode Island common law counts. The defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and argue that the plaintiff's numerous and varied counts fail to state a claim upon which relief may be granted; the defendants also assert that this suit is barred by the first amendment of the United States Constitution.

The plaintiff, Shelley Anne Turner, alleges that she was induced to join the Holy Spirit Association for the Unification of World Christianity, commonly referred to as the Unification Church. The Unification Church, whose United States headquarters are located in New York State, was founded by the well known Korean national, Sun Myung Moon. Under the auspices of the Unification Church and its spiritual leader, Reverend Moon, such organizations as the International One World Crusade, Inc. have been incorporated and serve as the proselytizing arm of the Church.

On July 29, 1973, Shelley Anne Turner, aged nineteen, attended an International One World Crusade "rally" at which Reverend Moon spoke. After being induced to join the Unification Church, Turner claims that the defendants Moon, Unification Church, and One World Crusade conspired to hold her in peonage and involuntary servitude. Constant threats against Turner placed her in fear and destroyed her ability to resist the will of the defendants. As a result of this alleged coercion, Turner was forced to work long hours—"often more

than 12 hours per day"—of "compulsory service" soliciting money and selling such items as candies, flowers and tickets for Unification Church rallies. For these efforts, Turner apparently received no monetary compensation but was provided with food and shelter. Despite her long hours of service, the defendants allegedly failed to pay contributions on her behalf under the Federal Insurance Contribution Act and intentionally failed to furnish her with a so-called "W–2" statement of earnings. Due to this alleged involuntary servitude, Turner suffered grave physical, emotional, and economic harm; in addition, the defendants' alleged activities resulted in her being deprived of the advantageous relationship of her family's love and affection. This alleged state of affairs continued from the summer of 1974 until mid-1975. After mid-1975, Turner apparently managed to break away from the Unification Church and soon thereafter filed suit in this Court.

For the sake of clarity, the plaintiff's asserted causes of action should be divided into five categories. *First*, on the basis of her being held in involuntary servitude, Turner claims violations of 42 U.S.C. §§ 1981, 1983, and 1985. *Second*, Turner seeks to imply a cause of action directly under the thirteenth amendment of the United States Constitution. *Third*, the plaintiff wishes this Court to imply civil causes of action from federal criminal statutes forbidding peonage (18 U.S.C. § 1581), involuntary servitude (18 U.S.C. § 1583), and the criminal enforcement provisions of the Internal Revenue Code (26 U.S.C. §§ 6674, 7204, 7202). *Fourth*, Turner alleges a violation of the Fair Labor Standards Act and asserts a cause of action under the civil enforcement provision of that Act (29 U.S.C. § 216). *Fifth*, the plaintiff alleges a quantum meruit claim for the services she performed for the Unification Church and asserts a tort claim for the alienation of her parents' and friends' affection. Because plaintiff is a resident of Rhode Island and claims damages over ten thousand dollars, she asserts these state claims under the Court's diversity jurisdiction, 28 U.S.C. § 1332.

■ The above listed causes of action reflect a liberal reading of the plaintiff's somewhat confusing complaint which is especially proper when considering a motion to dismiss. Fed.R.Civ.P. 8(f). And, of course, when considering a motion to dismiss, the plaintiff's factual allegations must be accepted as true. Despite this Court's broad approach to the complaint, this Court is compelled to grant the defendant's motion to dismiss. In ruling on this motion, the Court initially finds that the free exercise clause of the first amendment does not immunize the defendants from causes of action that allege involuntary servitude or intentional tortious activity. Therefore, the plaintiff's pleadings and novel causes of action deserve careful consideration. However, examination reveals, the plaintiff has failed to state any claims upon which relief may be granted.

## I.

■ Despite defendants' assertions, the free exercise clause of the first amendment does not prohibit a court from entertaining this suit. Deciding this case and applying the various cited statutes to the defendants' conduct would not require this Court to test the validity of Reverend Moon's religious beliefs or constitute any other interference with the Unification Church's religious liberty.

■ The first amendment absolutely protects the holding of any religious belief, no matter how bizarre or irrational. *Reynolds v. United States*, 98 U.S. 145, 166–67, 25 L.Ed. 244 (1878); *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Likewise, indoctrination and initiation procedures, conditions of membership and the motivation of one who joins a religious group are usually not subject to judicial review. *See United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944); *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). However, the "operational activities" of a religion, those activities that are not solely in the ideological or intellectual

realm, are subject to judicial review and may be regulated to achieve a sufficiently important state objective. *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (sale by children of religious literature prohibited); *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (religious parading without a license prohibited); *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878) (Mormon practice of poligamy prohibited). The Supreme Court has recognized that the first amendment's protection of religious liberty "embraces two concepts—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). Thus, religious operations that endanger public safety, threaten disorder, endanger the health of a member, or drastically differ from societal norms may be regulated or prohibited. *Prince v. Massachusetts*, 321 U.S. 158, 166–67, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878). The alleged involuntary servitude is unquestionably an act which has a serious adverse effect upon one of the Church's followers and constitutes conduct that violates the most fundamental tenets of both American society and the United States Constitution. The Unification Church cannot seek the protection of one constitutional amendment while it allegedly deprives citizens the protection of other constitutional guarantees.

## II.

Plaintiff Turner asserts causes of action under 42 U.S.C. §§ 1981, 1983, and 1985. Turner's claim under sections 1981 and 1983 can be quickly dismissed. Her claim under section 1985 presents a more serious issue; however, her present allegations are not sufficient to state a claim under that section.

■ The relevant portion of 42 U.S.C. § 1981 guarantees "[a]ll persons . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." This section does not cover a discriminatory deprivation of a citizen's rights when that discrimination is predicated upon the victim's religion. The United States Supreme Court noted in *dicta* that section 1981 "is in no way addressed" to discrimination based upon sex or religion. *Runyon v. McCrary*, 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Relying upon this *dicta*, federal courts uniformly have continued to limit section 1981 to racial discrimination. *See, e. g., Balmes v. Board of Ed. of Cleveland City Sch. Dist.*, 436 F.Supp. 129, 132 (N.D.Ohio 1977); *Enriquez v. Honeywell, Inc.*, 431 F.Supp. 901, 904 (W.D.Okl.1977); *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1, 10–15 (E.D.Pa.1975). Despite the lack of an authoritative United States Supreme Court interpretation, the limits of the section have been well defined by precedent. The plaintiff does not allege that any of the defendants' actions were based upon her race. From the little that appears in the complaint, any actions that the defendants took were apparently motivated by other reasons. Because the plaintiff does not assert that the defendants' actions were based upon her race, section 1981 provides her with no protection.

■ Turner's section 1983 claim is dismissed for the elementary reason that she does not allege a deprivation of rights by one acting under the color of state law. Section 1983, passed under the fourteenth amendment, is only triggered when state action is present. None of the defendants possess the slightest tinge of state color or action; thus, Turner's section 1983 claim must be dismissed.

In contrast to section 1983, section 1985(3) was passed under the thirteenth amendment and is not confined to actions performed under the color of state law. *Cf. Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The portions of section 1985(3) applicable to this case are phrased in broader language than the section 1981 provisions: "If two or more

persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action . . . ." In *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1970), the United States Supreme Court interpreted section 1985(3) as requiring "that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."

The United States Supreme Court has reserved judgment on "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under . . . § 1985(3)." *Griffin v. Breckenridge*, 403 U.S. at 102, n.9, 91 S.Ct. at 1798. Perhaps due to the general and expansive language of section 1985(3), the section has not been limited to actions based upon a racially discriminatory bias. Recently, several courts have expanded section 1985(3) to cover those conspiracies based upon a sexually discriminatory animus. *Novotny v. Great Amer. Fed. Sav. & Loan Assn.*, 584 F.2d 1235, (3d Cir. 1978); *Krieger v. Republic Van Lines of Southwest, Inc.*, 435 F.Supp. 335 (S.D.Tex.1977); *Curran v. Portland Superintending Sch. Comm.*, 435 F.Supp. 1063 (D.Me.1977); *but see Harbert v. Rapp*, 415 F.Supp. 83 (W.D. Okl.1976).

The arguments that extend section 1985(3) to prohibit sexually discriminatory conspiracies may apply with equal force to conspiracies based upon a religious bias. The language of section 1985(3) gives no basis for excluding religious groups from its protection. As the Third Circuit, *en banc*, noted, "the phrases of the statute are attuned to the evolving ideal of equality." *Novotny v. Great Amer. Fed. Sav. & Loan Assn.*, 584 F.2d 1235 (3d Cir. 1978). Discrimination against certain religions may well be considered "invidious" and "class based." Although a person's religion is hardly an immutable characteristic, a religious preference "bears no relation to [one's] ability to perform or contribute to

society." *Novotny, supra.* Therefore, discrimination on the basis of religion is irrational, invidious, and totally contrary to the fundamental rights that the first amendment guarantees.

▮ Despite the strength of this argument, this case does not require the Court to decide whether section 1985(3) should be expanded to include conspiracies based upon a person's religion. A sympathetic and liberal construction of Turner's complaint only reveals that the Unification Church deprived her of "equal protection of the laws" and of "equal privileges and immunities under the laws" when the defendants conspired to hold her in involuntary servitude. Yet, Turner fails to allege that the defendants' conspiracy was motivated by any "class-based discriminatory animus," be it racial, sexual, or religious. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970), makes such a discriminatory motive an indispensable element of a section 1985(3) cause of action. Turner fails to give the slightest hint that the motive behind the defendants' conspiracy was based upon the religious or atheistic beliefs she held prior to her Unification Church dealings. Turner has failed to allege an indispensable element of a section 1985(3) cause of action; therefore, she fails to state a claim under that section.

### III.

The plaintiff claims a cause of action under the thirteenth amendment of the United States Constitution. She apparently desires this Court to expand upon the rationale of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and imply a civil cause of action and a damage remedy from the words of the thirteenth amendment itself. Various federal courts have expanded *Bivens* beyond its original context of the fourth amendment. *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978) (fifth amendment); *Dellums v. Powell*, 184 U.S.App.D.C. 275, 566 F.2d 167 (1977) (first amendment); *Paton v. La*

*Prade,* 524 F.2d 862, 869–70 (3d Cir. 1975) (first amendment); *Wounded Knee Legal Defense/Offense Comm. v. FBI,* 507 F.2d 1281 (8th Cir. 1974) (sixth amendment). However, the rationale of *Bivens* and its progeny is not applicable to this case; therefore, this Court declines to imply a cause of action from the thirteenth amendment.

■■■■ The interest that the plaintiff claims, namely the right to be free from involuntary servitude, is clearly a federally protected interest. Therefore, a federal court has the "power" to imply a cause of action from the appropriate constitutional provision in order to redress the violation of this interest. *Bivens, supra* 403 U.S. at 407, 91 S.Ct. 1999 (Harlan, J., concurring). Despite this Court's "power" to create such a remedy, this Court must utilize its discretion and decide whether implying a cause of action and awarding compensatory relief on the basis of the thirteenth amendment alone is " 'necessary' or 'appropriate' to the vindication of the interest asserted." *Bivens, supra* at 407, 91 S.Ct. at 2010. (Harlan, J., concurring). Using the thirteenth amendment as a basis of relief is not appropriate or necessary for several reasons.

■■■■ This case, unlike *Bivens* and all its progeny, does not involve "the relationship between a citizen and a federal agent unconstitutionally exercising his authority." *Bivens, supra* at 391, 91 S.Ct. at 2002. *See also Dellums v. Powell,* 184 U.S.App.D.C. 275, 566 F.2d 167 (1977); *Paton v. La Prade,* 524 F.2d 862 (3d Cir. 1975). When implying a fourth amendment damage remedy, the United States Supreme Court stressed that the state law remedy was inadequate to vindicate fourth amendment interests because "[a]n agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Bivens, supra* 403 U.S. at 392, 91 S.Ct. at 2002. This case only involves alleged private wrongdoing. State law has traditionally addressed such torts as false imprisonment, intentional infliction of emotional distress, assault and battery; these traditional state causes of action appear to redress the plaintiff's alleged injuries adequately in this case. When private wrongdoing can be adequately redressed by state law, there is much less compulsion for the judiciary to erect an additional constitutional cause of action. *See Bivens, supra* at 393, 409, 91 S.Ct. 1999. Also unlike *Bivens'* fourth amendment context is the fact that the state laws that protect a person's physical and psychological freedom cannot be considered "inconsistent or even hostile" to the federal interest of protecting one from involuntary servitude. Further distinguishing this case from *Bivens* is the fact that Congress has actively protected the rights guaranteed by the thirteenth amendment by providing such often used statutes as 42 U.S.C. §§ 1981, 1985. Considering the plaintiff's alternative protections, the implication of a cause of action from the thirteenth amendment appears unnecessary and superfluous.

The implications of implying a cause of action from the thirteenth amendment must also be considered. The *Bivens* case specifically concerned a cause of action limited to federal violations of the fourth amendment. Because of the fourteenth amendment's state action requirement, causes of action implied from other constitutional amendments are automatically limited to wrongs committed under color of state or federal law. Yet, the thirteenth amendment is unusual in that it applies to the conduct between two private parties. *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). Implying the requested cause of action truly would "constitutionalize" a large portion of state tort law. Tortious acts between two private individuals, such as false imprisonment, would automatically become constitutional questions, even though state law has traditionally and adequately regulated such primary conduct. Such an expansion of the thirteenth amendment is not necessary to implement the guarantees of that amendment; nor is such an implication or interpretation prudent or appropriate.

## IV.

The plaintiff also wishes this Court to imply civil causes of action from several federal criminal statutes. She claims an implied civil cause of action under the federal anti-peonage statute (18 U.S.C. § 1581) and the criminal prohibition of involuntary servitude (18 U.S.C. § 1583). Further, Turner argues that the defendants' alleged failure to withhold contributions pursuant to the Federal Insurance Contributions Act provides her with a civil remedy implied from the Act's criminal enforcement provision, 26 U.S.C. § 7202. She also reads 26 U.S.C. §§ 6674 and 7204 as providing an implied civil cause of action to remedy the defendants' failure to supply a statement of earnings. Criminal statutes often create civil causes of action, even though the only express sanctions are criminal. *Reitmeister v. Reitmeister,* 162 F.2d 691 (2d Cir. 1947); *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1969). However, considering the facts alleged in the complaint and the criminal statutes in question, the Court refuses to imply the requested civil causes of action.

In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the United States Supreme Court listed four factors that must be considered before a private cause of action for damages can be implied from a criminal statute:

1. Does the statute create a federal right in favor of the plaintiff?
2. Is there any indication of legislative intent either to create such a remedy or to deny one?
3. Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy or to deny one?
4. Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

These factors counsel against implying the plaintiff's requested causes of action.

The federal statute prohibiting peonage, 18 U.S.C. § 1581, does not appear to create a federal right in favor of this particular plaintiff. Turner's complaint simply fails to indicate that she was being held in peonage, *i. e.,* performing compulsory service based upon the indebtedness of the peon to the master. An indispensable element of peonage is indebtedness to the master; the complaint never indicates that plaintiff's servitude was based upon her indebtedness. Therefore, plaintiff's reliance upon 18 U.S.C. § 1581 is misplaced. Further, even if the complaint did allege the elements of peonage, plaintiff would fail to state a civil cause of action under section 1581 for the same reasons that she fails to state a cause of action under the companion section 18 U.S.C. § 1583.[1]

18 U.S.C. § 1583 provides criminal sanctions against one who holds another in involuntary servitude. The plaintiff's reliance upon this section is misplaced because it does not provide, explicitly or implicitly, a civil cause of action. The plaintiff may not have passed the initial hurdle of alleging a state of servitude sufficient to trigger section 1583. It is unclear whether section 1583 should be expanded to include the type of involuntary servitude alleged in this case, namely servitude which was based upon psychological control or dominance over the servant. Involuntary servitude usually includes both elements of physical restraint and complete psychological domination. After a masterful examination of section 1583, Judge Friendly cautioned against broadly or vaguely defining the term "involuntary servitude" in the context of a criminal statute and held that:

> involuntary servitude means to us action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement, in Justice Harlan's language, 'superior and overpowering force, constantly

1. Section 1581 is often considered the companion section to 1583 in terms of both history and interpretation. *See United States v. Shackney,* 333 F.2d 475 (2d Cir. 1964). Thus, the arguments against implying a civil cause of action under 1583 apply with equal force to section 1581.

threatening' [203 U.S. at 34, 27 S.Ct. at 16]—not a situation where the servant knows he has a choice between continued service and freedom, even if the master has led him to believe that the choice may entail consequences that are exceedingly bad. *United States v. Shackney*, 333 F.2d 475, 486 (1964).

It is unclear whether plaintiff's servitude was brought about merely because she feared the religious consequences of terminating her allegiance to the Unification Church or if Reverend Moon and his followers represented a threatening, superior and overpowering psychological and/or physical force that gave plaintiff no choice but to continue her service to the Church. Even if plaintiff alleges the type of involuntary servitude that section 1583 criminally punishes, there is no indication that Congress intended to create a civil cause of action under this criminal statute. Unlike some federal criminal provisions, *see e. g., J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1969), this statutory scheme gives "no indication that civil enforcement of any kind was available to anyone." *Cort v. Ash*, 422 U.S. at 80, 95 S.Ct. at 2089. The legislative history of 18 U.S.C. § 1583 never suggests the creation of a civil remedy. In fact, considering section 1583 in the broader perspective of other statutes that effectuate the purposes of the thirteenth amendment, a legislative intention to deny a civil cause of action under section 1583 appears. Congress, acting against a backdrop of numerous federal and state statutes which provide civil causes of action for deprivation of thirteenth amendment liberties, evidently did not intend to utilize this criminal section for anything other than criminal enforcement. Further, those wrongful physical and psychological confinements not addressed by federal civil rights statutes are "traditionally relegated to state law." State tort law has long addressed the wrongs of false imprisonment and the intentional infliction of emotional distress. Considering the explicit state and federal

civil causes of action that may be available to Turner, it is "entirely appropriate in this instance to relegate respondent and others in (her) situation" to those remedies. *Cort v. Ash*, 422 U.S. at 84, 95 S.Ct. at 2091. Although "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the Congressional purpose," *J. I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964), the application of section 1583 to the factors set forth in *Cort v. Ash* convinces this Court that a civil cause of action from that criminal statute should not be implied.

■ The plaintiff also attempts to imply civil causes of action from two criminal tax enforcement provisions. Turner complains that the Unification Church willfully failed to provide a statement of her earnings as required by 26 U.S.C. § 6051 and failed to make tax contributions on behalf of Turner as required by the Federal Insurance Contributions Act (26 U.S.C. §§ 3101, 3102). The language and legislative context of these tax enforcement provisions do not provide a sufficient basis upon which to imply the requested civil causes of action.[2]

The provisions enforcing section 6051 do not provide any civil remedy, explicitly or implicitly. Section 6674 imposes a fifty dollar fine (payable to the government) for failure to provide a statement of earnings as required by section 6051. The context of section 6674 reveals no intention to provide a civil remedy. Unlike its neighboring sections, which explicitly designate both criminal and civil penalties, section 6674 is conspicuously silent as to any civil cause of action. This legislative context strongly indicates that a civil remedy was not intended. Section 7204 is the criminal provision that makes it a misdemeanor to willfully fail to provide a statement of earnings. The language of section 7204 is very limited and clearly only contemplates criminal enforcement:

> In lieu of any other penalty provided by law (except the penalty provided by sec-

---

2. Because the provisions relied upon do not provide a civil cause of action, this Court does not reach the issue of whether plaintiff is an

"employee" within the meaning of the Internal Revenue Code.

tion 6674), any person required under the provisions of section 6051 to furnish a statement . . . [will] be fined not more than $1000, or imprisoned not more than a year, or both.

Such language provides no basis to imply the plaintiff's requested civil cause of action.

The plaintiff is not any more successful at implying a civil cause of action from the criminal provision (26 U.S.C. § 7202) that enforces the Federal Insurance Contributions Act (26 U.S.C. §§ 3101, 3102). Section 7202 is the general criminal enforcement provision for title 26; neither its language nor its legislative context indicates that a civil cause of action should be implied from its criminal sanctions. The section is solely phrased in criminal terms, making it a felony for failing to collect or pay a required tax. Further, the legislative scheme of the Internal Revenue Code does not indicate that Congress intended to enforce these tax laws by providing civil causes of action or authorizing private attorneys general. Instead, Congress provided numerous administrative remedies for civil complaints and various criminal sections for enforcement purposes. The existence of administrative remedies is strong evidence of a Congressional intent to use the administrative avenues to address civil complaints and reserve the criminal provisions for state-initiated criminal enforcement. Implying the requested civil causes of action would not be consistent with the legislative scheme of these tax statutes. *Cf. Cort v. Ash*, 422 U.S. at 81, 95 S.Ct. 2080.

## V.

While under the influence of the Unification Church, Turner allegedly worked long hours selling merchandise and tickets on the streets and received little or no compensation for her efforts. She claims that such hours and payment violate the Fair Labor Standards Act (F.L.S.A.) (29 U.S.C. §§ 206, 207). Turner relies on an explicit civil remedy under the F.L.S.A., namely 29 U.S.C. § 216 which provides a civil cause of action to any employee whose employer has violated standards governing hours and wages. However, Turner is not an "employee" as defined in the F.L.S.A.; therefore, she is not covered by the Act and cannot state a claim under section 216 of the Act.

In order to be covered by the F.L.S.A., plaintiff must be an "employee" as defined by 29 U.S.C. § 203. That section defines the term employee cryptically: "any individual employed by an employer." The term has been interpreted broadly, *see Rogers v. Schenkel*, 162 F.2d 596 (2d Cir. 1947), but an employee must still be a "person whose employment contemplated compensation." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947). The plaintiff's complaint indicates that she never contemplated any monetary or tangible compensation from the Unification Church. Certainly, Turner's services cannot be termed voluntary or gratuitous as she was allegedly being held in involuntary servitude. Ironically, however, the plaintiff's complaint states that she performed the services in question on the "understanding and consideration" that such work "would be helping to create a better world." (Complaint p. 4). This is the only consideration that Turner alleges she expected; there is no allegation that she expected any compensation, in any form, from the Unification Church or the other defendants. Despite the plaintiff's laudable desire "to create a better world," performing services for charitable purposes without expecting any tangible compensation does not give rise to an employer-employee relationship within the meaning of the F.L.S.A. Therefore, plaintiff cannot claim a cause of action under 29 U.S.C. § 216.

## VI.

Finally, Turner attempts to invoke this Court's diversity jurisdiction by asserting both a tort claim and a quantum meruit claim under the common law of Rhode Island. The plaintiff fails to assert causes of action under these two particular state law counts.

In her state law tort claim, Turner argues that the defendants deprived her of the love and affection of her parents and friends and therefore interfered with an advantageous relationship. Rhode Island does not recognize this asserted tort claim. Under Rhode Island law, only a spouse can claim a cause of action for alienation of affection (of the other spouse). *Westerman v. Westerman*, 111 R.I. 412, 303 A.2d 757 (1973). Some courts have provided minors with a cause of action for the disruption of the family unit. *See Johnson v. Luhman*, 330 Ill.App. 598, 71 N.E.2d 810 (1947). Turner admits, however, that she was nineteen years of age at the time of her recruitment into the Unification Church and, thus, legally an adult, *see* R.I.Gen. Laws § 15–12–1 (1969 Reenactment; 1976 Supp.). Plaintiff concedes that no Rhode Island cases uphold her right to recover for this alleged tort (Memorandum in Opposition to Motion to Dismiss, p. 4) and this Court refuses to create such a tort action. *See* Restatement of Torts, 2d § 702A.

Plaintiff's quantum meruit count also fails to state the essential elements of a cause of action. This count incorporates Turner's allegation that she was "forced to do the bidding" of the defendants. The plaintiff then alleges that she was promised that she "would be helping to create a better world" by joining the Unification Church. The complaint states that the promise to create a better world furnished the "understanding and consideration" upon which Turner performed such services as the street sale of merchandise and the solicitation of monies. These allegations, even when read liberally, do not assert the essential elements of a quantum meruit claim under Rhode Island law. The plaintiff never alleges that she expected to be compensated for her services. Rhode Island appears to agree with the general rule that a party performing work must have a reasonable expectation of payment in order to assert a quantum meruit claim. *Bailey v. West*, 105 R.I. 61, 68, 249 A.2d 414 (1969); *Tonge v. Salisbury*, 54 R.I. 170, 174, 171 A. 372 (1934); *Messier v. Messier*, 34 R.I. 233, 243–44, 82 A. 966 (1912). The plaintiff specifically states that the consideration or compensation expected for her services was not monetary or even tangible; rather, the consideration was the intangible expectation that her services would help "create a better world." Such consideration or expectation is not sufficient to imply a contract between the plaintiff and the defendants. The general rule is that no recovery can be had, on a quantum meruit basis, for services rendered by reason of kindly, charitable, religious or humane motives. *See St. John's First Lutheran Church in Milbank v. Storsteen*, 77 S.D. 33, 84 N.W.2d 725; *Carlson v. Krantz*, 172 Minn. 242, 214 N.W. 928; *cf. Tucker v. Wakefield Trust Co.*, 53 R.I. 221, 223, 165 A. 443 (1933). Despite the plaintiff's alleged lack of free will, she performed the requested services without expecting any reward other than the creation of a better world. Such religious and humane motives cannot support a quantum meruit claim.

Admittedly, some of the plaintiff's allegations are confusing; but, none are necessarily contradictory. This plaintiff does not petition this Court pro se; instead, she is represented by competent legal counsel. Apparently the plaintiff could not assert the indispensable elements of a quantum meruit cause of action in good faith. This Court is constrained to hold that plaintiff does not state a cause of action under her quantum meruit claim or under any of her asserted counts. Therefore, defendants' motion is granted and the plaintiff's case is dismissed.