No. 86-095

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

MARY PAT MILLER,

       Plaintiff and Appellant,

-vs-

CATHOLIC DIOCESE OF GREAT FALLS,
BILLINGS AND ROMAN CATHOLIC BISHOP
OF GREAT FALLS, jointly and severally,

       Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nye & Meyer; Victoria Francis argued, Billings,
Montana

    For Respondent:

        Cure, Borer & Davis; Maxon R. Davis argued, Great Falls,
Montana
Crowley Law Firm; Peter F. Habein, Billings, Montana

---

Submitted: October 21, 1986

Decided: November 20, 1986

Filed: NOV 20 1986

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mary Pat Miller (now Mrs. Mullner) appeals the summary judgment dismissing her wrongful discharge complaint against defendants. The District Court for Yellowstone County concluded that applying the tort of bad faith in this case would infringe upon the free exercise of religion. We affirm.

The issue is whether the free exercise of religion clauses of the United States and Montana Constitutions bar consideration of the tort of breach of the covenants of good faith and fair dealing in the discharge of Mrs. Mullner for her failure to maintain discipline in the classroom.

The defendants also raise the issue of whether summary judgment can be upheld because no breach of the implied covenant of good faith and fair dealing is established in the record.

Little Flower School in Billings is part of the Catholic school system administered by the Catholic Diocese of Great Falls-Billings. Mrs. Mullner taught fifth and sixth grade students there during the school year 1983-84. Her immediate supervisor evaluated her as "outstanding" in every category. Her contract was renewed and she received a $1,000 raise for the 1984-85 school year.

During the 1984-85 school year, Mrs. Mullner had a new supervisor (the head teacher). The new head teacher did not approve of Mrs. Mullner's teaching methods. The district court file contains a copy of the head teacher's dated notes documenting her concerns and the concerns of parents, other teachers, and the school administrator about a lack of discipline in Mrs. Mullner's classroom. Mrs. Mullner admits that the head teacher spoke with her "on more than one occasion"

2

about problems in her classroom.  In November 1984 Father Wagner, the school administrator, told Mrs. Mullner that the next day would be her last day of teaching at the school, because she was not properly disciplining the children in her class.  She was paid for the following fifteen days, pursuant to the termination clause in her teaching contract.

Mrs. Mullner filed this suit alleging breach of the covenant of good faith and fair dealing in employment. Discovery was conducted, including depositions of Mrs. Mullner, the head teacher, and Father Wagner.  Defendants produced various documents, including copies of Mrs. Mullner's employment contract, her evaluation, and the 1984-85 Little Flower School handbook and code of conduct booklet.  The defense moved for summary judgment that application of the tort of bad faith would impermissibly interfere with freedom of religion.  The District Court granted that motion.

Since an affirmative answer to the issue raised by defendants would eliminate the necessity of reaching the constitutional issue, we will discuss defendants' issue first.

I

Can summary judgment be upheld because no breach of the implied covenant of good faith and fair dealing is established in the record?

The defendants argue that nothing in the record establishes any breach of an implied covenant of good faith and fair dealing.  They maintain that there were no objective manifestations of job security to Mrs. Mullner, and that there were indications to her that she was not performing

3

satisfactorily. They also maintain that there has been no evidence of lack of good faith on the part of Father Wagner.

The defendants' brief to the District Court in support of their motion for summary judgment did not raise this argument. It discussed only the constitutional issue. Issues not raised before the district court are generally not considered on appeal. Mont. Ass'n of Underwriters v. State, etc. (1977), 172 Mont. 211, 218, 563 P.2d 577, 581. However, this Court has the power to grant summary judgment even when no motion has been made. Treasure State Industries Inc. v. Welch (1977), 173 Mont. 403, 410, 567 P.2d 947, 951. Even so, the complaint's allegation of defendants' bad faith is supported by Mrs. Mullner's deposition. She further contends that she would have submitted additional evidence on this point, had it been raised in the lower court. Her position is that she reasonably believed her employment would continue. We conclude the record does not support summary judgment on this basis.

## II

Do the free exercise of religion clauses of the United States and Montana Constitutions bar consideration of the tort of breach of the covenants of good faith and fair dealing in the discharge of Mrs. Mullner for her failure to maintain discipline in the classroom?

The relevant constitutional provisions are U. S. Const. Amend. I:

> Congress shall make no law respecting an estab-
> lishment of religion, or prohibiting the free
> exercise thereof; . . .

and Art. II, § 5, Mont. Const.:

4

> Freedom of religion. The state shall make no law
> respecting an establishment of religion or prohib-
> iting the free exercise thereof.

Former Chief Justice Burger has acknowledged for the United States Supreme Court, in regard to the federal provision, that "[c]andor compels acknowledgement . . . that we can only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law." Lemon v. Kurtzman (1971), 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745, 755. The Court provided more guidance on application of the free exercise clause in Wisconsin v. Yoder (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15. In that case, the Court held that a Wisconsin requirement that all children attend school until the age of 16 was unconstitutional when applied to the Amish respondents, because compelling public school attendance beyond the eighth grade unconstitutionally interfered with their religious beliefs. The Court stated:

> The essence of all that has been said and written
> on the subject is that only those interests of the
> highest order and those not otherwise served can
> overbalance legitimate claims to the free exercise
> of religion.

Yoder, 406 U.S. at 215. We use that standard as our guide.

The parties do not dispute that Little Flower School played an important role in the religious mission of the Roman Catholic Church--that is, teaching the students the elements of the Catholic faith. Defendants point out that all aspects of parochial school education, including disci- pline, are permeated with the religious mission of the school. We agree with the conclusion of the District Court in Lemon that parochial schools constitute an integral part of the religious mission of the Catholic Church, and with the statement that "[i]n short, parochial schools involve

5

substantial religious activity and purpose." Lemon, 403 U.S. at 616.

This case must be distinguished from the cases cited by Mrs. Mullner involving such issues as wage rates in parochial schools or the application of neutral principles of law to division of property claimed by various members of a church group. See, e.g., Donovan v. Shenandoah Baptist Church (D.C.Va. 1983), 573 F.Supp. 320; Jones v. Wolf (1979), 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775. In order to consider Mrs. Mullner's contentions, this case requires an analysis of the discipline methods used in teaching various school subjects, including religion itself. The suggestion is made that consideration can be given to the methods of discipline without becoming involved with claims which are rooted in a religious belief. Father Wagner's deposition testimony demonstrates why this division of discipline from religious instruction cannot easily be made. He testified that he was not able to successfully teach religion to the students in Mrs. Mullner's classroom because of the absence of proper discipline. This example demonstrates how the failure to discipline in an acceptable manner directly interfered with the teaching of religion, which is one of the aspects of the free exercise of religion. Further, defendants point out that discipline itself is an essential element of the religious faith taught at Little Flower School.

A judicial determination of the presence or absence of good faith on the part of Father Wagner would require the court to examine the school's discipline policy as applied to classroom instruction covering both religious and nonreligious subjects, and to evaluate Father Wagner's interpretation and application of that discipline policy. Such an

6

examination of necessity would impinge upon elements of the teaching of religion, or the free exercise of religion. We conclude that discipline in the classroom is so intertwined with teaching which in turn is intertwined with religious principles that a court cannot properly make the determination requested here without interfering with a legitimate claim to the free exercise of religion.

The breach of the covenant of good faith and fair dealing in employment is a common-law tort which has been recently recognized in Montana but is not universally recognized. Gates v. Life of Montana Ins. Co. (Mont. 1982), 638 P.2d 1063, 39 St.Rep. 16. We apply the Yoder standard as our guide and conclude that Mrs. Mullner's tort claim is not a right "of the highest order and not otherwise served" so as to overbalance defendants' claim to the free exercise of religion. We hold that this suit is barred by the free exercise of religion clauses of the United States and Montana Constitutions.

Mrs. Mullner argues that resolution of this issue in defendants' favor will result in excessive government entanglement with religion, in violation of the Establishment Clause of the United States Constitution. A three-factor balancing test has been developed for evaluating Establishment Clause claims. The factors are: (1) the character and purpose of the institution involved; (2) the nature of the law's intrusion into church affairs; and (3) the resulting relationship between the government and the religious authority. Lemon, 403 U.S. at 615. The religious character and purpose of Little Flower School is not disputed. Denying application of the tort of bad faith in this case does not result in an intrusion into church affairs. The resulting

7

relationship between government and the religious authority is negligible, at best, because our holding applies only to this particular situation, and not to all applications of the tort of bad faith to religious organizations. We conclude after examining the three factors set forth in Lemon that prohibiting Mrs. Mullner's lawsuit does not violate the Establishment Clause.

Because allowing Mrs. Mullner's lawsuit to go forward would impermissibly interfere with the free exercise of religion, we affirm the summary judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

The issue in this case is _not_ whether the Catholic school officials have a right to set conditions of employment for teachers respecting the discipline of students. Of course they do. To deny the churches the right to afford a complete religious instruction, and the means to assure that the student receives the instruction, would be an unconstitutional infringement upon free exercise of religion.

Plaintiff's case here does not involve the teaching of religion. Plaintiff's case is premised upon the fact that she was denied due process in connection with her termination. She was not afforded an opportunity to change. She was not given a hearing in which she could explain her position. Although the church is entitled to set whatever standards it wants respecting and imparting religious education to its students, the law does require that certain fair procedures are necessary in order to accord due process.

The dismissed teacher here takes the position that she was an excellent teacher, disciplined the students, and the complaints lodged against her are false. She only asks for a hearing to explain her position. The denial of this opportunity does not promote free exercise of religion; rather it denies due process rights and the legal protection of the covenant of good faith and fair dealing to the plaintiff.

This case represents another example of this Court engaging in "bottom line" decision making without careful legal analysis of the issues. I sense an attitude on the part of the majority that says, "The courts have no business interfering in the churches' business". Although that may be true when dealing with religious instruction the principle

9

has no application to a claim that a teacher was denied procedural due process and therefore the covenant to deal fairly and in good faith was breached.

I would reverse and remand for trial.

_____
Justice

Mr. Justice William E. Hunt, Sr., dissenting:

I agree with the majority opinion that summary judgment cannot be upheld because of any absence of breach of the implied covenant of good faith and fair dealing.

I dissent on the second issue and would hold that the application of the implied covenant of good faith and fair dealing to the facts of this case would not unconstitutionally inhibit the free exercise of religion nor violate the free exercise of religion clauses of the United States and Montana Constitutions. Summary judgment was not proper on these grounds and I would reverse and remand this case for trial on the merits.

Defendant contends Little Flower School played an important role in the religious mission of the Roman Catholic Church and that all aspects of their education are permeated with religious mission. The majority has stated that this case involves the process of discipline and instruction itself within a religious school setting.

I have no quarrel with these statements as far as they go but they do not fully address the facts and issue before this Court. Plaintiff herself acknowledges that she was told she was dismissed because of problems with discipline in her classroom. She does not question that improper discipline can be used as a reason to terminate an employee under the terms of the school's contract.

Rather her claim addresses whether she had notice of the shortcomings that displeased her employer so she could correct them and whether the discipline used by her met the disciplinary standards set out by her employer, Little Flower

11

School. Nowhere does plaintiff challenge the validity of that disciplinary standard.

The First Amendment protects against government establishment of religion and prohibition of the free exercise thereof. Art. II, § 5 of the Montana Constitution provides these same protections.

I find Cantwell v. State of Connecticut (1940), 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 instructive for direction on the issue of free exercise of religion. In its discussion on the First Amendment, the U.S. Supreme Court found that:

> . . . the Amendment embraces two concepts,--freedom to believe and freedom to act. The first is absolute but, in the nature of things the second cannot be. Conduct remains subject to regulation for the protection of society.. . .

Id. at 303-304, 60 S.Ct. at 903, 84 L.Ed. at 1218.

> . . . Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public . . .

> Even the exercise of religion may be at some slight inconvenience in order that the State may protect its citizens from injury.

Id. at 306, 60 S.Ct. 60 S.Ct. at 904, 84 L.Ed. at 1219.

The case before us involves a private citizen seeking to enforce a common law tort through the courts of this state against her employer, a church-operated school. The cases relied on by the majority regarding excessive entanglement between church and state are not fully applicable here. Rather, a wealth of case law indicates that although federal and state courts have no jurisdiction over solely internal ecclesiastical affairs or the validity of religious beliefs, they may exercise jurisdiction over torts incurred by religious institutions and in church controversy which impinges on property or civil rights. Lund v. Caple (Wash.

12

1984), 675 P.2d 226; Turner v. Unification Church (D. R.I. 1978), 473 F.Supp. 367 aff'd (1979) 602 F.2d 458; Saul v. Roman Catholic Church of Arch. of Sante Fe (N.M. 1965), 402 P.2d 48. Federal courts have directly addressed the issue of whether the free exercise clause immunizes defendant churches from tort claims.

In Turner, the court stated that:

> . . . . the "operational activities" of a religion, those activities that are not solely in the ideological or intellectual realm, are subject to judicial review and may be regulated to achieve a sufficiently important state objective.

Id. at 371-372.

In a similar case Van Schaick v. Church of Scientology of Cal., Inc. (D. Mass. 1982), 535 F.Supp. 1125, the court observed that:

> Whether or not such immunity exists depends, in part, on whether the adjudication of the claim would require a judicial determination of the validity of a religious belief. . .
>
> Causes of action based upon some proscribed conduct may, thus, withstand a motion to dismiss even if the alleged wrongdoer acts upon a religious belief or is organized for a religious purpose. (Emphasis added.)

Id. at 1135.

In the present case the application of the tort of good faith and fair dealing to the church-operated school does not require a determination of the validity of a religious belief. A clergy administrator's religious role, in itself, does not bar application of the tort of good faith or any other common law tort. Religious leaders and organizations are responsible for breach of duty under common law. This Court has jurisdiction to apply the common law to this situation because such a review of a dismissal for the failure to use proper discipline in a classroom, whether a

13

public or religious classroom, does not involve a judicial determination of the validity of a religious belief.

Further, a series of case law decisions have indicated that neutral application of common law has been constitutionally applied to some circumscribed situations involving internal church disputes. For example, in Konkel v. Metropolitan Baptist Church, Inc. (Ariz. App. 1977), 572 P.2d 99, the court found that where the issue is whether the expelling organization had acted in accordance with its own regulations the court had jurisdiction to determine whether the expulsion was proper. Id. at 100. Other jurisdictions follow a similar view. Ogden Street Church, Etc. v. Gospel Temple Church, Etc. (Colo. App. 1974), 522 P.2d 757; Gospel Tab Body of Christ Church v. Peace Pub. & Co. (Kan. 1973), 506 P.2d 1135; Mount Zion Baptist Church v. Second Baptist Church (Nev. 1967), 432 P.2d 328; Wolozyn v. Begarek (Okla. 1963), 378 P.2d 1007.

The Supreme Court in Jones v. Wolf (1979), 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 stated:

> The neutral-principles approach cannot be said to "inhibit" the free exercise of religion, any more than do other neutral provisions of state law governing the manner in which churches own property, hire employees, or purchase goods.

Id. at 606, 99 S.Ct. at 3027, 61 L.Ed.2d at 786.

Thus since courts have been found to have jurisdiction to settle certain internal church disputes, I believe there is abundant authority for this Court to allow application of neutral tort law to respondent's external dispute.

The majority opinion also relies on Wisconsin v. Yoder (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 for the authority that only values of the "highest nature" can be grounds for inhibiting First Amendment rights.

14

They do not appear to consider the fact that the Yoder court found that only certain claims would invoke the protection of the First Amendment. The Supreme Court held that:

> . . . to have the protection of the Religion Clauses, the claims must be rooted in religious belief. Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. (Emphasis added.)

Id. at 215-216, 92 S.Ct. at 1533, 32 L.Ed.2d at 25.

While maintenance of discipline is important to any school, whether public or private, I would argue that it is not the correct factor in the equation to apply to the above standard.

More accurately this Court should ask whether plaintiff's claim that she was terminated unfairly or in bad faith is a claim that impinges on the defendant's religious belief. I would argue that application of the tort of bad faith in these circumstances does not do so.

Employers owe a duty to deal fairly and in good faith in employment relationships. This Court has found that a breach of this duty is a tort. Gates v. Life of Montana Ins. Co. (Mont. 1983), 668 P.2d 213, 40 St.Rep. 1287.

Employees have an investment in their employment which is protected. Their very livelihood is dependent on their employment. Loss of employment often jeopardizes the family home and structure. The State of Montana has a compelling interest in maintaining that structure and stability for the citizens of this state. The duty of an employer to treat an employee fairly and terminate employment in good faith was

15

recognized because it struck an important balance between the inherent unequality of bargaining power present in many employment relationships. Dare v. Montana Petroleum Marketing Co. (Mont. 1984), 687 P.2d 1015, 41 St.Rep. 1735.

The State of Montana has an important state objective in applying the obligation of good faith to employment relationships including lay teachers at church-operated schools. This common law tort as applied to Little Flower School is not a violation of the First Amendment and I would reverse the grant of summary judgment and allow plaintiff to bring her action to a jury for trial on the merits of her case.

_____<br>
Justice

Mr. Justice John Conway Harrison, dissenting.

I dissent. I would have this case go to trial and not be decided by summary judgment.

_____<br>
Justice